Estate of Annie Preston Bassett, Deceased, by Edward M. Bassett, Executor v. Commissioner.
Estate of Annie Preston Bassett v. Commissioner
Docket No. 9639.
United States Tax Court
1947 Tax Ct. Memo LEXIS 131; 6 T.C.M. (CCH) 887; T.C.M. (RIA) 47221; July 28, 1947
Edward M. Bassett, Esq., and Howard M. Bassett, Esq., for the petitioner. Henry C. Clark, Esq., for the respondent. HARLAN Memorandum Findings of Fact and Opinion HARLAN, Judge: Petitioner seeks a redetermination of a deficiency in estate tax in the amount of $61,204.30. This proceeding presents two questions: (1) Were the gifts amounting to approximately $213,000 in value to decedent's children, grandchildren, sons-in-law and daughters-in-law, made in contemplation of death? (2) Under the circumstances in this case, is an attorney fee of $10,000 excessive? Findings of Fact Annie Preston Bassett was born May 12, 1865. She died testate January 22, 1942, leaving her husband, Edward M. Bassett, executor of her estate, and five children *132 and fifteen grandchildren. The estate tax return was filed with the collector of internal revenue for the first district of New York on April 14, 1943. It disclosed a gross estate of $95,013.22, a net estate subject to additional tax of $9,956.19 and a total tax of $546.62. The Commissioner added to the value of the estate all of the gifts reported as having been made by the decedent in the two years prior to her death and appraised the value thereof at $213,902.55. During the married life of decedent and her husband the latter, who was a practicing lawyer, had divided his income with his wife in such a way that there income from investments was about equal. In 1920 decedent and her husband began making gifts to their children. These gifts, so far as decedent was concerned, began on December 15, 1922, and a tabulation of these gifts up through March 1, 1932, with the amounts as evaluated by decedent's husband, is as follows: Date
Donee - Relationship
Type
Amount
Dec. 15, 1922
Preston R. Bassett - Son
Mortgage
$10,000.00
Marion B. Luitweiler - Daughter
Mortgage
10,000.00
Isabel B. Wasson - Daughter
Mortgage
6,000.00
Dec. 15, 1923
Preston R. Bassett - Son
Mortgage
4,650.00
Marion B. Luitweiler - Daughter
Mortgage
4,650.00
Isabel B. Wasson - Daughter
Mortgage
4,650.00
Howard M. Bassett - Son
Mortgage
4,650.00
Helen B. Hauser - Daughter
Mortgage
4,650.00
Dec. 15, 1925
Isabel B. Wasson - Daughter
Mortgage
5,000.00
Howard M. Bassett - Son
Mortgage
5,000.00
Dec. 15, 1927
Helen B. Hauser - Daughter
Mortgage
5,000.00
Feb. 1, 1929
Helen B. Hauser - Daughter
Mortgage
5,000.00
May 1, 1929
Isabel B. Wasson - Daughter
Mortgage
2,400.00
Mar. 1, 1932
Howard M. Bassett - Son
Mortgage
5,000.00
Total
$76,650.00
Decedent made no gifts from March 1, 1932, to March 1, 1940.
*133 Decedent was the daughter of a Presbyterian minister. She had graduated from Wellesley and following graduation taught school for a number of years. She had taught Sunday School for thirty years. She was active in literary societies, having participated in the organization of one of them, "The Fortnightly Club." She was also active in the work of the Young Women's League and the Red Cross. She had traveled extensively and was a very earnest reader. She frequently prepared papers to be presented before groups. Her reading included all subjects of general interest and matters pertaining to health. On November 25, 1938, decedent executed her last will and testament whereby she bequeathed her real estate, household goods and belongings to her husband and her residuary estate to her five children share and share alike or the heir of each child per stirpes. In less than two weeks thereafter she informed her husband that she had discovered a lump in her right breast. Her husband took her at once to a surgeon and the lump was diagnosed as scirrhus carcinoma. This cancer had been six months in formation prior to the operation and had been perceptible for two months prior thereto. The officiating *134 surgeon operated the next day but did not inform decedent of the nature of her illness, although the patient asked him if he thought she had a cancer, but he did inform decedent's daughter, sister and husband. Following the operation a number of Xray treatments were given the patient but the wound healed without any complications and there was no evidence of a recurrence of the cancerous condition in any other locality at that time. In the early part of 1941 a cough, which decedent had been experiencing for some time prior thereto, so developed that she again visited her surgeon on January 23, and on May 12, 1941. On May 16, 1941, an Xray picture of the lung was taken which indicated to the surgeon the probable existence of a cancer in that organ. Xray treatments were immediately renewed and continued for several months. On December 9, 1941, an Xray photograph was made which showed the definite existence of a cancer in the right lung. The surgeon informed decedent's daughter of his suspicions after the first Xray picture was taken in May and then told her of his certain convictions after the second Xray picture was taken in December. In the latter part of 1941 pneumonia developed *135 and the general condition of the decedent became progressively worse. In December she realized she was not getting well, although she gave no evidence of being in fear of imminent death and laid plans which provided for her continued existence during the year 1942. On March 1, 1940, decedent again initiated the disposition of her property through gifts, the last series of which were made on January 12, 1942, ten days before her death. These gifts as evaluated by decedent's husband are set out as follows: Date
Donee - Relationship
Type
Amount
Mar. 1, 1940
Preston R. Bassett - Son
Mortgage
$ 4,000.00
Marion B. Luitweiler - Daughter
Mortgage and cash
4,000.00
Isabel B. Wasson - Daughter
Mortgage
4,000.00
Howard M. Bassett - Son
Cash and mortgage
4,000.00
Helen B. Hauser - Daughter
Cash and mortgage
4,000.00
Total
$ 20,000.00
Jan. 25, 1941
Preston R. Bassett - Son
Cash and mortgage
$ 3,950.00
Marion B. Luitweiler - Daughter
Cash and mortgage
3,950.00
Isabel B. Wasson - Daughter
Cash and mortgage
3,950.00
Howard M. Bassett - Son
Cash and mortgage
3,950.00
Helen B. Hauser - Daughter
Cash and mortgage
3,950.00
Total
$ 19,750.00
June 21, 1941
Preston R. Bassett - Son
Mortgage
$ 11,750.00
Marion B. Luitweiler - Daughter
Mortgage
11,791.00
Isabel B. Wasson - Daughter
Mortgage
11,850.00
Howard M. Bassett - Son
Mortgage
11,884.00
Helen B. Hauser - Daughter
Mortgage
11,983.00
Total
$ 59,258.00
Oct. 1, 1941
Margaret Bassett - Grandchild
Mortgage
$ 3,000.00
Preston Bassett, Jr. - Grandchild
Cash and mortgage
3,000.00
Allen Bassett - Grandchild
Cash and mortgage
3,000.00
William Bassett - Grandchild
Cash and mortgage
3,000.00
Elizabeth Ann Bassett - Grandchild
Bond and mortgage
4,000.00
Edward M. Bassett, II - Grandchild
Cash and mortgage
4,000.00
Dorothy Bassett - Grandchild
Cash and mortgage
4,000.00
Bobby Luitweiler - Grandchild
Cash and mortgage
4,000.00
Jimmy Luitweiler - Grandchild
Cash and mortgage
4,000.00
Marion Luitweiler - Daughter
Cash and mortgage
4,000.00
Elizabeth Wasson - Grandchild
Cash and mortgage
4,000.00
Edward Wasson - Grandchild
Cash and mortgage
4,000.00
Anne Wasson - Grandchild
Cash and mortgage
4,000.00
Joan Hauser - Grandchild
Cash and mortgage
4,000.00
Mary Hauser - Grandchild
Bond and mortgage
4,000.00
Edward Hauser - Grandchild
Bond and mortgage
4,000.00
Total
$ 60,000.00
Nov. 1, 1941
Jeanne Bassett - Daughter-in-law
Bond and mortgage
$3,915.00
Marion Luitweiler - Daughter
Bond, mortgage and cash
3,915.00
Lorion Bassett - Daughter-in-law
Bond and cash
3,915.00
Alfred Hauser - Son-in-law
Bond and cash
3,915.00
Theron Wasson - Son-in-law
Bond and cash
3,915.00
Total
$ 19,575.00
Jan. 12, 1942
Preston Bassett - Son
Bond
$ 3,988.00
Jeanne Bassett - Daughter-in-law
Bond
3,988.00
Isabel Wasson - Daughter
Bond
3,988.00
Thereon Wasson - Son-in-law
Bond
3,988.00
Helen Hauser - Daughter
Bond
3,988.00
Alfred Hauser - Son-in-law
Bond
3,988.00
Howard Bassett - Son
Bond
3,988.00
Lorion Bassett - Daughter-in-law
Bond
3,988.00
Total
$ 31,904.00
GRAND TOTAL
$210,487.00
*136 The certificate of decedent's death gives the primary cause thereof as carcinoma of the lungs existing for ten months and the contributory cause thereof as chronic myocarditis which existed for one year. In the estate tax return petitioner claimed a deduction of $10,000 for attorneys fees and stated that Bassett, Thompson and Gilpatric of 233 Broadway, New York City were the attorneys. The return is signed by Howard M. Bassett as attorney. $5,000 has actually been paid as attorneys fees and the Commissioner determined that $5,000 was a reasonable amount for this purpose and refused a larger deduction. Thompson, Bassett and Gilpatric have been succeeded by the firm of Basset and Bassett, consisting of the petitioner and Howard M. Bassett. Opinion The question in this case is purely one of fact. As was stated by the Court in United States v. Wells, 283 U.S. 102. "The question necessarily is as to the state of mind of the donor." In the solution of this question precedents afford a minimum of help because each individual case, to some degree, is distinguishable on the facts. The statutory law is clean. Section 811 (c), I.R.C. provides that the *137 gross estate of a decedent shall include "* * * Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this subchapter;" * * *
Regulations 105, section 81.16, provides: "The phrase 'contemplation of death,' as used in the statute does not mean, on the one hand, that general expectation of death such as all persons entertain, nor, on the other, is its meaning restricted to an apprehension that death is imminent or near. A transfer in contemplation of death is a disposition of property promoted by the thought of death (though it need not be solely so prompted). * * *" The leading case in this field is the Wells case, supra. The Court therein defines "contemplation of death" as used in the statute as follows: "* * * It is contemplation of death, not necessarily contemplation of imminent death, to which the statute refers. It is conceivable that the idea of death may possess the mind so as to furnish a controlling motive *138 for the disposition of property, although death is not thought to be close at hand. Old age may give premonitions and promptings independent of mortal disease. Yet age in itself cannot be regarded as furnishing a decisive test, for sound health and purposes associated with life, rather than with death, may motivate the transfer. The words "in contemplation of death" mean that the thought of death is the impelling cause of the transfer, and while the belief in the imminence of death may afford convincing evidence, the statute is not to be limited, and its purpose thwarted, by a rule of construction which in place of contemplation of death makes the final criterion to be an apprehension that death is 'near at hand.'" The decision of the trial court in Land Title Trust Co. v. McCaughn, 7 Fed. Supp. 742 (sustained 297 U.S. 606) discusses the nature of the presumption that gifts of a material part of decedent's property made without consideration within two years of his death are in contemplation of death. It then says of the taxpayer's burden to remove such presumption: "* * * The burden is then upon the taxpayer to show that the motive is not 'of the sort *139 which leads to testamentary disposition,' and it has come to be pretty generally recognized by the courts that he can meet this burden only by showing affirmatively what the motive was. Further, it follows that the burden is not met if a motive is disclosed which is as consistent with a testamentary disposition of his property as with a gift inter vivos; or if two motives are disclosed, either of which might have accounted for the transfer, the one testamentary and the other not. Farmers' Loan & Trust Co. v. Bowers (C.C.A.) 68 Fed. (2d) 916." The petitioner's position in this case as set forth in his brief is: "The taxpayer by the evidence submitted at the hearing showed that there were four basic motives for the decedent's giftmaking program, all associated with life: "(a) A joint plan of gift making to her children, children's spouses and the grandchildren, formulated in 1918 by the decedent and her husband. "(b) A desire on the part of the decedent to assist her daughter Marion and Marion's children financially, because of their need. "(c) A desire to equalize gifts to the other children and their families with those made to Marion. "(d) A desire on the *140 part of the donor to have her husband relieved of responsibilities." It is our conclusion that reasons (a) (limited to decedent's children), and (b) above would no doubt predominate in petitioner's decedent's mind as causing the gifts from 1922 to 1932. However, we have not found sufficient facts to establish that any of the above reasons, or all of them combined, were the impelling motive of the gifts made in the last two years of decedent's life; while they might possibly have persisted somewhat in the mind of the donor. After discontinuing all gifts for eight years, decedent's donative activities were suddenly revived on March 1, 1940. The petitioner explains this quiescent period because of the economic depression which occurred in 1930 and also because of the domestic difficulties of one of decedent's daughters to whom she did not wish to make gifts because she felt that the money would be poorly invested by the husband of said daughter. While there are facts in the record which cause us to question the above reasons, we see no purpose in discussing this point because the question before us is not to determine why gifts were not made in the eight years preceding 1940. The *141 question is why was there such an unaccountable activity of gift making from March 1, 1940, to January 12, 1942? In this connection it is interesting to consider the personality and background of Mrs. Bassett. From all the evidence she was not only a woman of unusual intelligence but she had an excellent education. Reared in a minister's family, a graduate of Wellesley, for many years a teacher, active in religious and literary work up to within a few months of her death, and an omniverous reader, she does not present the picture of a woman who would not know the implications of a lump appearing on the breast when she was 75 years of age, when the doctor ordered an immediate operation and when that operation was followed by Xray treatments. With all of the effort by the medical profession, insurance companies and the current magazines to educate the public on the symptoms of cancer, it stretches credulity too much to believe that Annie Preston Bassett, when she asked the doctor on December 9, 1938, whether or not he had removed a cancer and when she received no reply but did receive Xray treatments, did not know her afflition. In fact, just two weeks before the operation she had signed *142 her will and the lump in her breast had been evident for at least six weeks prior to that time. However, she was evidently an optimistic, energetic individual and it is possible that she felt herself recovered. However, her general condition had developed so that on January 23, 1941, she again consulted her physician, had an Xray picture on May 16th, which again was immediately followed by Xray treatments. The doctor informed decedent's daughter as to his suspicions. The daughter did not testify in this case as to whether or not she had informed her mother; but whether decedent was correctly informed or not, it again stretches credulity too much to believe that a woman of decedent's intelligence who had had one operation for the removal of a cancer and who was getting Xray treatments a second time for an uncontrollable cough, would not have a pretty general idea as to the cause of her trouble. At any rate, within a very few weeks thereafter she became inordinately energetic in the disposition of her resources. Up to that time, under the advice of her husband who was apparently a most capable lawyer, all of her gifts had been so spaced and regulated in amount that she incurred no *143 gift tax. However, after January 23, 1941, her next series of gifts, amounting to approximately $12,000 each to her five children seemed to be in reckless disregard of the gift tax laws. Shortly thereafter for the first time she gave $60,000 to her fifteen grandchildren, approximately $16,000 for the first time in her life to her four daughters-in-law and sons-in-law; and finally, on January 12, 1942, ten days before her death, she gave $40,000 equally divided between four of her children and her four children-in-law. During the last two years of her life she disposed by gifts of over $210,000 and died with an estate of less than $10,000 subject to tax. She was 78 years and eight months of age at her death and in addition to her affliction of cancer during the last year of her life she had been a sufferer of myocarditis. Petitioner lays great stress upon the fact that the decedent was of a cheerful frame of mind and, to the extent of her physical abilities, continued her normal activities. She also, in the early months of the winter of 1941 had two coats done over for future use. From this evidence the Court draws two conclusions. One is that the early religious training of this *144 woman, together with her adherence to religious doctrines throughout her life had probably alleviated what might otherwise be a fear of death even though she realized completely her condition. The other is she had no facts on which she could decide that death was in the immediate future. These two conclusions, however, do not preclude what seems to be the only deduction that can be drawn from all the evidence in this case, which is that from January 23, 1941, up to the time of her death decedent realized the approach of her demise, even though she did not anticipate its immediate occurrence. It is our conclusion therefore that all gifts made by the decedent to her children, grandchildren and her sons-in-law and daughters-in-law during 1941 and 1942 were made in contemplation of death and as a substitute for testamentary disposition. The second question presented in this case is the allowance of attorney fees. The Commissioner has determined that $5,000 is a reasonable allowance for attorneys fees in this case and we do not find ourselves in a position to overrule that determination. While the estate tax return lists the firm of Bassett, Thompson and Gilpatric as the attorneys for *145 the estate, we have no evidence as to the membership of that firm, whether or not the members other than Bassett were active in the practice and, if active in the practice, whether or not they participated in the fee and in the work. After the return was filed the firm name became Bassett and Bassett and the only names signed to any of the documents before this Court are either Howard M. Bassett or Edward M. Bassett. These men in representing the estate were also representing themselves. Edward M. Bassett was a devisee of decedent's real estate and executor of her estate. Howard M. Bassett was one of five residuary legatees. The testimony as to the amount of work done by the firm of Bassett and Bassett on behalf of others than themselves is not sufficient to overcome the presumption of the correctness of the Commissioner's determination. Decision will be entered under Rule 50.